Submitted on briefs January 12, decided February 8, 1910.

DAVIS v. WILSON.

[106 Pac. 795.]

VENDOR AND PURCHASER—CONTRACT—NATURE AND FORM—SALE OR OPTION.

1. Where a written contract bound the owner of land to sell it to plaintiff for $1,500, and to execute a deed on payment on or before April 12, 1907, but that if plaintiff within that time elected not to purchase, the contract should be null and void, it was not a mere option, but a contract of sale.

VENDOR AND PURCHASER — SALE — PURCHASER'S DEFAULT — TENDER — DEMAND OF PAYMENT.

2. Where time was not of the essence of a contract for the sale of land, the vendor could not put the vendee in default, so as to escape specific performance on tender of the balance due with interest, without tendering a deed and demanding payment.

VENDOR AND PURCHASER—DEFAULT—ENFORCEMENT OF FORFEITURE.

3. Intent to forfeit money paid by vendee on contract for the sale of land must clearly appear before the court will permit the vendor to retain both the money and the land because of the purchaser's default in making payments within the time required.

VENDOR AND PURCHASER—RIGHTS OF VENDOR—TITLE—SECURITY FOR DEFERRED PAYMENTS.

4. Under an executory contract for the sale of land, the vendor, in the absence of language in the contract indicating some other intent, is the holder of the legal title as security for deferred payments.

VENDOR AND PURCHASER—FORFEITURES—DEFAULT IN PAYMENTS.

5. Where no forfeiture is declared by the terms of a contract for the sale of land, equity will relieve the vendee against a mere failure to pay the purchase price on the day named.

From Josephine:   HIERO K. HANNA, Judge.

Statement by MR. JUSTICE MCBRIDE.

The complaint states, in substance, that on April 12, 1906, the defendant Wilson was the owner of certain lands, described in the complaint, and that on said date he undertook and agreed to sell the same to plaintiff for the sum of $1,500, in payment extending from said date up to and including April 12, 1907. That the contract was in writing, duly executed and recorded, and that plaintiff at said date paid defendant $25 on account of the purchase price. That said instrument provided that if the payments therein specified should be made as re-quired, defendant would execute to plaintiff a warranty

deed to the premises, but that should plaintiff, within the time specified for said payments, elect not to purchase said premises, the contract should become null and void. That before the 11th day of May, 1907, the defendant had elected to purchase said premises, and said defendant Wilson sold the same to plaintiff. That before May 11, 1907, there had been paid to defendant, the following additional sums, to-wit. February 9, 1907, $100, March 9, 1907, $100. That on the 11th day of May, 1907, and while said contract was still in full force and effect, the defendant Wilson, to further carry out the terms and conditions of said contract, and in support of said written instrument, made, executed, and placed in escrow with the First National Bank of Southern Oregon, at Grants Pass, in said county, his good and sufficient deed of said premises to the plaintiff, to be held by said bank subject to the following conditions, a writing accompanying said deed, to-wit: That if within 15 days from the date of said escrow agreement and deed, plaintiff should pay the defendant an additional sum of $100, with interest from said date at 8 per cent to date of payment, and an additional sum of $175 within 90 days, and like interest, and $1,000 within two years, and like interest, then said bank should deliver said deed to plaintiff, but in case of default said bank should return said deed to said defendant Wilson. That time was not made the essence of any of the payments or other conditions in either said recorded instrument or said escrow agreement. That as a part of the transaction of placing said deed in escrow an additional, but unnecessary, instrument was executed, wherein the plaintiff was to have the right to purchase said premises within the times and under the terms specified in said escrow agreement. That afterwards, on June 10, 1907, the plaintiff paid the defendant on account of the purchase of said premises an additional sum of $100, making the total amount paid by plaintiff to said defend-

ant, on account of the purchase price of said premises, the sum of $325 out of a total of $1,500. That afterwards during 1907 the banking and money conditions generally in the United States, and especially in Oregon, became so changed that banks, though solvent, universally refused to honor the checks of their depositors, excepting in very small sums, such as would be necessarily required by said depositors. That during said period, for the protection of credit, legal holidays were declared by the Governor of Oregon from day to day, extending over a period of six weeks or two months. That during said period there was more or less distrust amongst bank depositors unacquainted with the business, in which class said defendant Wilson belongs, and the defendant Wilson became alarmed that if said money be paid to said bank under said agreement, he would not be permitted to withdraw the same at will, and withdrew said deed from escrow without any right to withdraw the same, but with the assurance to the plaintiff that he would thereafter carry out the terms of said agreement and convey said property upon the payment of the balance of the purchase price. That afterwards negotiations were had between the plaintiff and defendant Wilson, and he assured the plaintiff that he was still able, ready, and willing to convey said premises, and during none of the times herein mentioned has exercised any claim of right for forfeiture under said contracts. That in November, 1907, and on the 9th day of March, 1908, and on the 12th day of March, 1908, said defendant Wilson assured the plaintiff that he was still willing to carry out said contract and agreed upon the time within which the $1,000 of the balance of the purchase price should be paid. That on the 12th day of March, 1908, defendant Wilson claimed to the plaintiff that in addition to the balance of the purchase price, and $100 on account of interest thereon, plaintiff ought in equity to pay him an additional sum of $150 because if he

had had the payments due·at the time of said money stringency, he could have made at least $150 with the use of said money. And the plaintiff, desiring to deal equitably with the defendant Wilson, then and there agreed that within the month of March, 1908, they would pay him the sum of $1,000 on account of said purchase price, and that upon the final payment for said premises they would pay him $100 on account of said interest, and an additional sum of $150 as a consideration for said defendant not having foreclosed or attempted a forfeiture of said contract. That while these negotiations for final settlement between plaintiff and said defendant Wilson were in progress, in March, 1908, the defendant Smith learned of the same, and, with full knowledge of the rights of the plaintiff and of its equitable interest in said premises, attempted to acquire the legal title thereto, through said defendant Wilson, and caused said Wilson to place in escrow with said bank his deed to said Smith, covering said premises, taking an option from said Wilson to purchase said premises within 40 days from said date, March 16th, for the sum of $1,750, $200 of which the defendants Wilson and Smith claimed to have been paid to Wilson by Smith upon said option, but whether the same was really paid, or was only a form and fiction for the carrying out of said fraudulent transaction, this plaintiff has no knowledge or information sufficient to form a belief. That Smith took option with full knowledge and notice of the plaintiff's contract and agreement with Wilson; that on March 21, 1908, plaintiff tendered to defendant $1,485, being the balance of purchase price, the $100 interest, and the $150 above mentioned, and demanded a deed which defendant refused to give; and plaintiff has brought the sum of $1,425 into court and deposited it with the clerk.

To this complaint there was a general demurrer, which being overruled, defendant refused to plead further, and appealed to this court.        AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. Oliver S. Brown.*

For respondent there was a brief with oral arguments by *Messrs. Reames & Reames* and *Mr. Peter A. Deisch.*

MR. JUSTICE MCBRIDE delivered the opinion of the court.

The complaint is indefinite in many particulars where definiteness is certainly desirable, and a motion to make more definite and certain would have been very opportune. But we think that it states a cause of suit sufficiently to be good as against a general demurrer.

1. As shown by the complaint, time was not of the essence of the contract, which seems to have been not a mere option, but a contract of sale, upon which the plaintiff had paid $325.

2. Under such circumstances, before defendant could put plaintiff in default so as to escape specific performance upon tender of the balance due, with interest, he should have tendered a deed and demanded payment. *Frink* v. *Thomas,* 20 Or. 269 (25 Pac. 717: 12 L. R. A. 239.)

3. The law is adverse to forfeitures, and the intent to forfeit money, paid upon a contract of sale, must clearly appear before the court will permit the vendor to retain both the money paid and the land which is the subject-matter of the contract.  See *Frink* v. *Thomas,* 20 Or. 269 (25 Pac. 717: 12 L. R. A. 239), and cases there cited.

4. Under an executory contract for the sale of real estate the vendor, in the absence of language in the bond or contract indicating some other intent, is the holder of the legal title as security for the deferred payments. *Coles* v. *Meskimen,* 48 Or. 57 (85 Pac. 67) ; *Burkhart* v. *Howard,* 14 Or. 39 (12 Pac. 79.)

5. Where no forfeiture is declared by the terms of the contract, or by its necessary implication, courts of equity will interfere to relieve a party against mere failure to

pay the purchase money upon the exact day. *Lennon* v. *Napper*, 2 Scholes & Lefroy, 682. In the case last cited Lord Chancellor Reesdale, speaking of the action of courts of equity, in contracts of this character, says: "They dispense with that which would make compliance with what the law requires oppressive; and, in various cases of such contracts, they are in the constant habit of relieving the man who has acted fairly, though negligently. Thus in the case of an estate sold by auction, there is a condition to forfeit the deposit, if the purchase be not completed within a certain time, yet the court is in the constant habit of relieving against the lapse of time." Smith, the co-defendant, is in no better situation than Wilson, as it appears from the complaint that he entered into the contract with Wilson with full notice of plaintiff's equities.

The decree of the corcuit court is affirmed.

AFFIRMED.