Argued at Pendleton, October 30; reversed December 10, 1929;
objection to cost bill sustained January 7; rehearing
denied January 14, 1930

# NORBERT H. MASCALL *v.* BOYD L. ERIKSON

## ET AL.

(283 Pac. 2)

For appellant there was a brief over the names of *Mr. William Smith, Mr. Errett Hicks* and *Mr. Earl B. Moore* with an oral argument by *Mr. Smith.*

For respondents there was a brief over the names of *Mr. George H. Cattanach* and *Messrs. Nichols, Hallock & Donald* with an oral argument by *Mr. James T. Donald.*

HAMILTON, ACTING J. From this record it will be seen that the question is presented as to the rights accruing to these parties after entering into the agreement by which the defendants were restored to the possession of the property theretofore contracted to be sold by them and the plaintiff relinquished his said rights accruing under the original contract of sale. It will be observed that the written contract between the

parties provides that in the event of the purchaser's failure to make his payments as therein provided, or failure to perform any of the terms of his agreement, his rights under the contract shall be terminated and the vendors are authorized, without notice, to take full and complete possession of the premises sold and purchased, and in such contingency the rights of the parties are provided for as follows:

"The rights of the second parties in said premises on account of payments made under this agreement shall be subject to settlement and liquidation by the parties hereto."

It conclusively appears from the evidence that, upon the failure of the purchaser to continue his payments under the contract, the vendors and purchaser mutually agreed that the property should be received by the vendors and that the purchaser should relinquish all interest therein. We find from the evidence that the contract was to this extent rescinded and abandoned, without any oral agreement made in regard to the payments which had been made upon the purchase price by plaintiff. It seems to be the theory of respondents that the contract of sale was unaffected thereby, and that they were in a position to recover the balance of the purchase price from the plaintiff; and the court, evidently acting upon that theory, gave the decree for this amount, with that of a strict foreclosure, and this constitutes the question of law which is presented to the court for determination.

■ It will be necessary to refer to the terms of the written agreement upon that subject. The parties, by the phraseology used by them referring to the subject, provide that in the event of failure on the part of the purchaser in making his payments "that they shall be subject to settlement and liquidation between the par-

ties hereto.'' It may be granted that just what was meant is to a certain extent uncertain and indefinite. The contract, however, should be construed from the standpoint of the parties when they were contracting, and so as to give effect to all the provisions if possible, always preferring that construction which renders the agreement legal rather than one which will make it void: *Arment v. Yamhill County,* 28 Or. 474 (43 P. 653) ; *Lachmund v. Lope Sing,* 54 Or. 106 (102 P. 598). In *Lachmund v. Lope Sing,* supra, the court says:

"The general rule is that, where in a contract clauses are repugnant and incompatible, the earlier prevails, if the inconsistency be not so great as to avoid the instrument for uncertainty.  *  *  *  This rule is subject to the qualification, however, that the contract must be construed to effect the intention of the parties as gathered from the entire instrument; and, if there are repugnant clauses, they must be reconciled, if possible. The intent, and not the words, is the essence of every agreement if it can be ascertained therefrom."

We conclude that there can be no other reasonable interpretation of this contract than that this provision referred to was inserted to provide for the contingency in which might possibly arise the failure of the purchaser to make his payments as agreed, and that in the event thereof the parties had in mind that there should be an accounting, or, as is said in the agreement, a settlement or liquidation with reference to the payments made by the purchaser. So to construe the agreement is to give it legal effect, and this construction was apparently within the contemplation of the vendors and purchaser. From the language used, when considered with reference to the subject-matter of the agreement and the surrounding circumstances, it is manifest that it was not the intention of the parties, nor so understood, that in case of fail-

ure on the part of the purchaser in making all payments provided for in said agreement there should be a forfeiture of those paid. Such interpretation is not in accordance with the tenor and purport thereof. The event has happened to which reference was made in the contract; namely, the purchaser has failed in his payment, and following that the parties have abandoned and rescinded the contract of sale so entered into. The defendants have had returned to them the property the subject of sale. This is the result of their mutual agreement. We deem the rule of law to be that when the vendor and vendee have abandoned and rescinded a contract of sale entered into by them neither is in position to maintain action or suit for enforcement of the original contract. The rule applicable is that rescission abrogates the contract, not partially, but completely, and after a binding election to rescind a party can not insist on rights thereunder, but each of the parties is returned to his previously existing rights: 13 C. J., p. 623, § 683; 39 Cyc. 1924, and cases cited. It is said that a rescission must be *in toto*. A party can not affirm a contract in part and repudiate it in part. He can not accept the benefits on the one hand while he shirks its disadvantages on the other: 13 C. J. 623, § 682, cases cited.

The adjustment of the unsettled accounts existing arising from the transaction of the vendors and vendee under the contract of sale hereinbefore set forth is to be had in consonance with the principles of equity. Equity is adverse to forfeiture, and the intent to forfeit money paid on a contract of sale must clearly appear before the court will permit the vendor to retain both the money paid and the land which is the subject-matter of the contract: *Frink v. Thomas,* 20

Or. 265 (26 P. 717); *Davis v. Wilson,* 55 Or. 403 (106 P. 795); *Johnson et al. v. Berns et al.,* 111 Or. 165 (209 P. 94).

The doctrine is well supported that when the parties voluntarily agree to rescind a contract, there being no express stipulation with reference to payment or payments already made thereunder, the law will imply a promise on the part of the vendor to refund such payment or payments to the purchaser, and the latter may maintain an action to recover back the same. This rule is well sustained by the cases cited. There is, however, this qualification, that there must be deducted from such amount allowed the purchaser such sum or sums as are in the nature of a just counter-claim against the demand of the purchaser. In the instant case, it is deemed that plaintiff, in the accounting, is properly chargeable with the reasonable rental value of the said premises for the three years so in his possession, which the court adjudges to be the sum of $3,600.

Again, the contract between the parties contains the following promise made on the part of the plaintiff:

"The second party agrees that in the use and enjoyment of said premises which he has herein agreed to purchase, he will use the same in a good and farmer-like manner, and will so depasture the same as not to permanently destroy the native grasses and range thereon, and that he will pasture and use the said premises and grow crops thereon in the manner customary among good and careful stockmen in the community where said property is situated, and that he will maintain the fences and other improvements on said property in as good condition as the same are now in."

The defendants in their answer filed in said cause alleged, among other things, that the plaintiff, while

in possession of the property, "failed to maintain the fences and improvements thereon in as good condition as they were in when he took possession of the same, and did not use the said premises in a farmerlike manner, but, on the contrary, overgrazed the same and failed to cultivate the farming lands thereon in the proper manner, and that the defendants, upon retaking possession thereof, were required to expend considerable money and a large amount of labor in repairing said fences and improvements, and in putting the said lands in their former condition."

The evidence in this cause shows that plaintiff, in the particulars set forth, has failed in maintaining and caring for said property as so agreed upon by him, to the injury of defendants. The court finds that the defendants should be and are awarded therefor the sum of $1,500, to be deducted from the amount that plaintiff may be allowed in recovery of his said payments so made under said contract.

It is decreed that the plaintiff recover from said defendants the sum of $12,066.70, less the sum of $3,600 and the further sum of $1,500, being, in all, $6,966.70; that plaintiff be decreed a lien against the real property so described in said contract of sale to secure the payment of said balance so found to be due him. It is ordered that plaintiff recover his costs incurred in this court, that there be no recovery of costs in the circuit court by any of the parties hereto, and that the decree of the circuit court so rendered herein be and is hereby reversed.

REVERSED. REHEARING DENIED.