Decided February 23, 1897.

## HOLBROOK v. INVESTMENT CO.
(47 Pac. 920.).

30  259
s32  105

Vendor and Purchaser—Bond for Deed.—A vendor in an action at law in Oregon has the right, as between itself and the defaulting purchaser, to declare the contract at an end, and to enforce the provisions as to forfeiture agreed upon: *Sayre* v. *Mohney*, 30 Or. ——, cited.

Brokers' Contract—Commissions.—Real estate brokers agreed to sell certain lots in consideration of all the proceeds above $800 an acre. It was also agreed that the price might be paid in installments of $5 or more a month, the brokers to retain $10 from the first two installments, and one-half of each installment thereafter till their commissions were paid. Later there was a supplementary agreement that, if any of the purchasers on credit should forfeit their contracts, all forfeited installments paid to the brokers on such sales might be retained as commissions; and, should they effect a resale on credit, all installments thereafter paid were to be divided equally, till the vendor should have received under the new sale $800 an acre. *Held*, that, where contracts were forfeited for non-payment, unpaid commissions for the original sales were also forfeited.

From Multnomah:   E. D. Shattuck, Judge.

Action by F. B. Holbrook and another to recover from the Investment Company certain commissions alleged to be due for selling certain lots. There was a judgment for plaintiffs, and defendant appeals.

Reversed.

For appellant there was a brief over the name of *Williams, Wood & Linthicum*, with an oral argument by *Mr. Geo. H. Williams*.

For respondents there was a brief over the name of *George, Gregory & Duniway*, with an oral argument by *Mr. Ralph R. Duniway*.

Opinion by Mr. Chief Justice Moore.

This is an action by S. B. Riggen and F. B. Holbrook against the Investment Company, a corporation, to recover compensation for services in negotiating sales of real property on credit, the contracts for which were cancelled by the defendant for failure of the purchasers to pay the installments of the purchase price at the time agreed upon. The record discloses that on October 7, 1890, the plaintiffs, as partners, were employed by the defendant to negotiate the sale of certain town lots in Irvington Park, Multnomah County, for which service it agreed to pay them all sums realized therefor in excess of $800 per acre, and it was also agreed that the purchase price might be paid in installments of not less than $5 per month, without interest, in which case the plaintiffs were to retain the first two payments, not exceeding $10, and one-half of each installment thereafter, until their compensation was fully paid. On February 12, 1891, the parties entered into a supplementary agreement, by the terms of which it was provided that if any of the persons to whom these lots had been sold or might be sold upon credit should forfeit their rights, all forfeited installments paid to the plaintiffs on such sales might be retained as commissions, and, should they effect a resale of the premises on credit, all installments thereafter paid were to be divided equally between the plaintiffs and defendant, until the latter should receive, under the new sale, $800 per acre. On October 7, 1891, Riggen having assigned to Holbrook all his interest in the contract, the partnership existing between them was dissolved, Riggen retiring therefrom, in consideration of which Holbrook agreed to pay him twenty-five per cent. of the gross profits thereafter derived from the sale of said lots; to collect at his own expense and pay him one-half of all moneys due the firm, and also to pay all debts that he might thereafter incur on account of the prosecution of

the business, while each agreed to pay one-half of the
firm debts then outstanding. On January 9, 1892, Rig-
gen, for a valuable consideration, transferred to Holbrook
and one E. Williams all his right, title, and interest in
and to the contract entered into between the Investment
Company and Riggen & Holbrook, excepting, however,
his interest in the commissions due or to become due on
lots sold up to that date. On September 3, 1891, the
plaintiffs sold on credit to one Mrs. C. E. Stevenson four
lots in said tract, for $675, of which she paid $20 down,
and promised to pay $20 on the 3d of each month there-
after until the purchase price was fully paid; whereupon
the defendant entered into a contract with her upon
these terms, which stipulated that time was of the essence
of the agreement, and that the defendant had the option
to declare the payments made thereon forfeited, and to
cancel the contract, unless the payments were made at
the time agreed upon. Mrs. Stevenson, under said con-
tract, paid to the plaintiffs $300, of which they retained
$170, and paid the remainder to the defendant as its part
thereof, but she made default in the payment of the install-
ment which became due November 3, 1892, and, having
made no further payments thereon, the defendant, on
July 24, 1893, exercised the option reserved in the con-
tract, and gave her notice thereof, whereupon she sur-
rendered her rights under the agreement, and delivered
it up to the defendant to be cancelled. Thereafter Hol-
brook and Williams resold the said lots to her, and she
entered into a new contract with the defendant for the
purchase thereof, in which the paymens theretofore made
were taken into account, and paid the money due under
the new contract to Holbrook, who retained one-half
thereof, and paid the remainder to the defendant. The
plaintiffs allege that, on November 3, 1892, there was due
on Mrs. Stevenson's contract $350, of which they are

entitled to $177.55, when collected, and that thereafter, and before the expiration of the time limited therefor, she tendered the amount due, but the defendant refused to receive the same, and, without the knowledge or consent of the plaintiffs, and with intent to deprive them of their compensation, it obtained a surrender of her interest in the land, and cancelled her contract; and that the plaintiff thereafter demanded of the defendant said $177.55, but it refused to pay the same. The complaint contains six separate but similar causes of action, and a prayer for judgment for the sum of $951.11.

The defendant, after denying the material allegations of the first cause of action, sets out copies of the several contracts hereinbefore mentioned, and alleges that it was the duty of the plaintiffs to collect the money as it became due from Mrs. Stevenson under her contract, but that they neglected or were unable to do so after November 3, 1892, after which time she made no payment or offer of payment thereon, and that on July 24, 1893, defendant exercised the option contained in the contract, and that the cancellation was made with the full knowledge and consent of Holbrook as the representative of the plaintiffs. The answers to the other causes of action are, in effect, the same as the foregoing. The reply having put in issue the allegations of new matter contained in the answer, a trial was had before the court, at which the defendant, after the plaintiffs had introduced their evidence and rested, moved the court for a judgment of non-suit, but the motion was overruled, and the court found the facts in substance as hereinbefore set forth, and gave judgment for the plaintiffs in the amount demanded, from which the defendant appeals. Within ten days from the time this appeal was perfected, the plaintiff Riggen obtained an order of the court for leave to issue execution to enforce the payment of the judgment, notwithstanding the appeal,

and from this order the defendant also appeals.  An execution having been issued in pursuance of the foregoing order, the court, upon motion, ordered the sheriff to enforce the writ as to the costs and disbursements, but to collect from the defendant only one-half of the judgment, and to return the writ when satisfied to that extent, whereupon Riggen appeals from this latter order.

Counsel for the company contend that their client, in the agreements entered into with the plaintiffs, reserved the right to declare a forfeiture of any contract of purchase for the mere non-payment of any installment due thereon, and to order a resale of the premises affected thereby, and in case of such declaration of forfeiture it was also understood that plaintiff's right to any unpaid commissions thereon should be forfeited; that, the resales of lots having been made after the dissolution of the co-partnership, the firm of Riggen & Holbrook have no interest in any commissions claimed on account of such resales; that the court erred in its refusal to grant a judgment of non-suit, and that the findings of fact do not support the judgment, for which reason it should be reversed; while counsel for the plaintiffs maintain that the written agreement of the defendant to convey any of the lots in Irvington Park transferred to the obligee an equitable estate in the premises, the surrender of which, upon a declaration of forfeiture thereof, was tantamount to a settlement of an existing obligation, and amounted to a substituted payment of the debt due under the contract of purchase, which at once entitled the plaintiffs to their commissions.  The question involved renders an examination and construction of the contracts entered into between the parties necessary.  The first contained the following provisions:  "In case lots are sold on time, in pursuance of this agreement, it is agreed that said lots may be sold on installments of not less than five dollars

($5.00) per month, with interest; and in such case the parties of the second part shall retain the first two install- ments, not exceeding ten dollars ($10.00), and out of each installment thereafter one-half thereof, till their commis- sion or compensation shall have been fully paid." This clause was modified by the contract entered into on Feb- ruary 12, 1891, which contained the following stipulation: "In all cases where sales have been or shall be made by the parties of the second part of lots under said agree- ment of October 7, 1890, and the purchasers shall forfeit their rights under such sales, and a second sale is had, all installments paid to the parties of the second part under such forfeited contracts shall be considered pay- ments upon the commission of the parties of the second part under the terms of said agreement of October 7, 1890; that is to say, that in case the parties of the second part shall have received two installments upon such for- feited contract, and a new sale is made, all installments under said new sale shall be divided equally between the parties of the first and second part, until the parties of the first part shall have received thereout the full amount coming to them under the terms of said agreement, which is a modification of the same." It will be observed that the parties to these contracts did not expressly provide that the defendant should declare a forfeiture of the rights of the purchasers under their respective agreements for the non-paymnt of any installment when due, but it was clearly understood that some of these agreements would probably be forfeited, anticipating which the parties hereto agreed upon a method for the disposal of the property affected thereby, and a settlement of the pur- chase price and commissions in case of a resale thereof. In the contracts entered into between the defendants and the purchasers of these lots, it was stipulated that time should be of the essence of the agreement, and that

the obligor should have the option to declare the amounts
paid thereon forfeited, and the contract cancelled, in case
of default in any payment; but the plaintiffs, not having
been parties thereto, were probably not bound by the
terms of these agreements.   In equity, it has been held
in this State that a bond for a deed transferred to the
obligee the equitable estate in the premises, while the
obligor held the legal title as security for the payment
of the purchase money *(Burkhart* v. *Howard,* 14 Or. 39;
12 Pac. 79); but at law the rule is otherwise; the vendee
under a bond for a deed, it has been held, acquires no
interest or estate whatever in the land agreed to be con-
veyed: *Sayre* v. *Mohney,* 30 Or. (47 Pac. 197).   And
the case at bar being an action at law, the defendant had
the undoubted right, as between itself and a defaulting
purchaser, to declare the contract at an end, and to
enforce the provisions agreed upon:   2 Warvelle on
Vendors, 818;   Pomeroy's Specific Performance, § 390;
*Snider* v. *Lehnherr,* 5 Or. 385; *Frink* v. *Thomas,* 20 Or. 265
(12 L. R. A. 239, 25 Pac. 717).

    This being so, the question is presented whether the
plaintiffs, under their contracts with the defendant, are
bound by such forfeiture and cancellation.   The rule is
well settled that a real estate broker, in the absence of
any agreement to the contrary, has earned his commis-
sion when he effects an actual sale, or produces a pur-
chaser who is ready, able, and willing to purchase upon
the terms indicated by the principal:   *Fisk* v. *Henarie,* 13
Or. 156 (9 Pac. 322); *Kyle* v. *Rippey,* 20 Or. 446 (26 Pac.
308); *Booth* v. *Moody,* 30 Or. (46 Pac. 884).   But here the
rule is varied by the agreement that on the sale of a lot
upon credit, the plaintiffs should retain as their com
mission the first two installments not exceeding $10,
and one-half of each installment thereafter until their
compensation was fully paid.   Under this clause, it must

be conceded the plaintiffs could not recover from the defendant any part of their commissions, except as the purchasers paid the installments stipulated in their agreements. An examination of the second contract entered into between the plaintiffs and defendant discloses that a forfeiture of the rights of purchasers and a second sale of the same premises presumptively operated beneficially to each party, since the amount paid thereon was retained by each; and, while the plaintiffs, on the subsequènt sale, were not entitled to the two first installments, they were to receive one-half of each installment until they obtained the full amount coming to them as if no previous sale had been made. In other words, the plaintiffs, upon a declaration of forfeiture, retained the money they had received, and also obtained another commission for securing a purchaser for the same property. Prior to the dissolution of the partnership, Riggen would probably have reaped a decided advantage from the forfeiture of these agreements and a resale of the lots; and hence the contract with the defendant of February 12, 1891, prescribing the mode of adjusting such commissions, was a valuable property right, which inured equally to each partner, and, this being so, when Riggen, upon a dissolution of the partnership, assigned to Holbrook all his interest in the contract for the sale of Irvington Park lots, the latter thereby acquired whatever interest the former had therein, and, as a consideration therefor, Holbrook agreed to pay him twenty-five per cent. of the gross profits to be derived from all subsequent sales. Under this agreement Riggen became entitled to commissions upon the resale of lots, the agreement to purchase which had been declared forfeited; but, when he assigned to Holbrook & Williams all his interest in the contract for the sale of lots in Irvington Park, he was no longer

entitled to any portion of the commissions arising from sales or resales of this property thereafter to be made.

Counsel for plaintiffs cite and rely upon the case of *Bush* v. *Abraham*, 25 Or. 336 (35 Pac. 1066), in support of the theory that the surrender by the purchaser of his right under an agreement to convey reinvested the defendant with the equitable estate in the premises, and, being a substituted payment, amounted to a settlement by the purchaser of the obligation, and at once rendered the commissions on account of such sale due and payable, notwithstanding the forfeiture. The rule announced in that case cannot, in our judgment, have any application to the case at bar, for the reason that the parties stipulated, impliedly, for the forfeiture, and also that the commissions were not to be paid except as they were collected from the purchasers. It is true the parties did not in direct terms stipulate that the defendant should have the right to declare a forfeiture of any of the contracts of purchase, or that, upon a declaration of such forfeiture, their commissions on account of the sale should also be forfeited; but, having agreed to take another commission on account of a resale of the lots declared forfeited, we think it is inferred from a fair construction of their contracts that they agreed to these terms; and, as the forfeitures complained of were declared by the defendant after Riggen had assigned his interest to Holbrook & Williams, neither he nor the firm of which he was a member had any interest in the commissions thereafter earned on account of the sales or resales of any of this property; and, this being so, the findings of fact do not support the judgment, and the court erred in its refusal to grant a judgment of non-suit, for which reasons the judgment is reversed, and the cause will be remanded with instructions to dismiss the action.

The judgment being erroneous, the order allowing the

issuance of an execution thereon must be reversed also, and the appeal of Riggen from the order requiring the writ to be returned is dismissed.

REVERSED.