Argued and submitted February 23, reversed and remanded May 12, 1993

# FIRST INTERSTATE BANK
# OF OREGON, N.A.,
*Respondent,*

*v.*

# James B. MORRIS, Jr.,
*Appellant.*

# (C910692 CV; CA A75002)

851 P2d 1176

Barbee B. Lyon, Portland, argued the cause for appellant. With him on the briefs were Edwin C. Perry and Tonkon, Torp, Galen, Marmaduke & Booth, Portland.

Lauren E. Winters, Portland, argued the cause for respondent. With her on the brief were Jennifer L. Palmquist and Foster, Pepper & Shefelman, Portland.

Before Warren, Presiding Judge, and Edmonds and Landau, Judges.

WARREN, P. J.

**WARREN, P. J.**

Defendant appeals from a summary judgment for plaintiff. We reverse.

This case deals with the termination of a personal line of credit that plaintiff granted to defendant. On February 15, 1990, the parties signed two agreements, a Master Borrowing Agreement (agreement) and a negative pledge of stock (pledge), by which defendant agreed not to sell certain shares of stock while the line of credit was available to him. A few months later the parties executed the agreement again with a lower maximum line of credit. One year later plaintiff terminated the loan, giving defendant 60 days to pay the entire balance.

When defendant did not pay, plaintiff filed this action. Plaintiff's complaint alleges that it had a right under the contract to terminate at any time; it does not allege any failure to perform by defendant. Plaintiff then moved for summary judgment, asking the court to rule that it properly terminated the contract and that defendant owed the full balance.

■ The agreement includes a clause that allows plaintiff to terminate the line of credit at any time upon written notice.[1] Defendant argues that language from the pledge contradicts and takes precedence over the agreement and invalidates plaintiff's termination.

■ Instruments executed together and as part of the same transaction are to be construed together. *Lowe v. Harmon*, 167 Or 128, 137, 115 P2d 297 (1941). We must look at both agreements to determine the proper effect of the termination clause.

Paragraph 5 of the pledge gives plaintiff the right to payment through liquidation of the stock if it believes its position is insecure or jeopardized.[2] Paragraph 6 says:

---

[1] The termination clause states, in pertinent part:

"Bank may terminate the line of credit at any time by giving Borrower written notice of such termination."

[2] Paragraph 5 provides:

"In the event that the Bank reasonably believes its position to be insecure or jeopardized, it may require and the Borrower will execute, such steps necessary

"This agreement, not withstanding [*sic*] Bank's right under 5. above, Borrower covenants and agrees that in the event Logic Automation fails to meet recorded revenues of $9 million and is not profitable for twelve months ending 12-31-90, Borrower agrees to repay the outstanding principal balance of the Loan, together with accrued interest, on or before 3-31-91 and Bank shall terminate the Credit Accommodation."

Paragraph 6 sets up a special condition under which plaintiff can call in the loan if the company that issued the pledged stock is not profitable. Defendant argues that paragraphs 5 and 6 give plaintiff a right to terminate the loan that would not have been necessary if the parties had intended that plaintiff have the right to call in the loan at any time under the agreement.

Defendant also argues that the two agreements are inconsistent and create an ambiguity as to what the parties intended, so that extrinsic evidence of that intention may be considered. We agree that the two agreements appear to conflict as to plaintiff's right to terminate the agreement, creating an ambiguity and a question of fact as to the intent of the parties. Plaintiff did not present any evidence about intent in support of its motion for summary judgment. The court improperly granted summary judgment to plaintiff.

Reversed and remanded.

---

to reduce the obligations of the Borrower to the Bank through liquidation of the Stock."